The panel has before it two cases being submitted today without oral argument on the briefs, namely Appeal No. 05-3209, Fascion v. United States Postal Service, and Appeal No. 05-3374, Techily v. General Accounting Office. The first case on the argument list is Athletic Alternatives, Appeal No. 05-1378. Mr. Maynard, good morning. Welcome. Please proceed. Your Honor, this case has a fairly long history. We're quite aware of it. It's been in front of this court and this judge in particular. There are several reasons why this court should reverse the court denied us a jury trial. The facts are pretty clear. We filed a notice for a jury trial. We filed this case back in 1998 in October. We sent a copy of it. We served it on the defendant. When we did the joint statement, the parties stipulated, they signed the joint statement that indicated the plaintiffs had asked for a jury trial. That was done in 1999. It's not until 2003, right before trial, that the defendants come forward and argue that they had not gotten actual notice that we had demanded a jury. I thought the issue was whether there was required service, not whether there was actual notice. They had actual notice. They raised the issue that they had not gotten service. Correct. So the only issue then would seem to be service. Well, the issue is whether or not you have a constitutional right to a jury trial. No, that's not disputed. Of course you do. Whether or not we intentionally waived it. Your Honor, we did not. We have no way. Well, was it served timely or not? We thought it was. Well, it's not a matter of opinion. Is there a record that service was documented within the time prescribed by the rules? Our service shows that we served the complaint in the jury domain. They say they didn't get it. I'm not in a position to say they didn't get it. I don't know. For example, I've had cases, Your Honor, where we have served a 10-page complaint. Well, let's not talk about other cases. I'm having enough trouble understanding the facts of this case. What was their position? They got the complaint but not the jury domain? That's right. And you're claiming that they were served simultaneously by the same person? Yes, we believe they were. We used a process server. Believing it as the judge concluded it was not served. And the Ninth Circuit law, which covers here, precludes the jury trial. What can we do about that? Your Honor, I think that when you look at the recent opinions such as Blakely, where the Supreme Court has talked about the fundamental rights to a jury trial, that this court can conclude that you should not waive a constitutional right to a jury trial in civil action where there is an allegation that the service hasn't been given when actual notice was given, where the party who is denying... You're talking about Blakely, the criminal sentencing case? Yes. That doesn't have anything to do with this issue. It has to do with jury trials and the rights to jury trials, Your Honor. Gary Quay. The right to jury trials are subject to procedural requirements in the rule. The rule hasn't been held unconstitutional because of some theory that it unduly encumbers the constitutional right, and therefore, compliance with the rule is required. The precondition of exercising the right. So it seems to me either you have to prove compliance with the rule or this contention can't succeed. Your Honor, it is literally impossible to prove compliance with the rule when one serves the way we serve these days. We filed the notice with the court. The district court had it. We turn it over to a process server to serve it on the other side. If for some reason, either the document gets lost, and we don't have any knowledge of that, and it doesn't come up for five years, and in the meantime, everybody acts as though it's been served. The parties even sign documents that indicate that there is a request for a jury trial. Nobody's raising this for five years. What are we supposed to do as plaintiffs? Well, normally, we ask the questions here, not the counsel. I understand. Are you arguing that there is some legal basis for saying that if the lack of service isn't raised for some period, here you say five years, that somehow that overcomes the requirement of the rule and the case law? I think it is a piece of evidence that the court would look to for estoppel purposes and for waiver purposes in addition. My question to you is what authority says that a party is a stop from raising this issue if there's been a delay of five years? Your Honor, I just believe it's common sense. We don't have any case law on that issue. But if the court looks at the facts of the case and determines that the defendant signs off on the pre-trial and indicates that the plaintiff has requested a jury trial and they sign off on it. Don't repeat stuff. We've got that point. Are there other contentions that are critical to your argument for reversible error? Your Honor, we also believe that there were a couple of issues that the court disposed of on motions for summary judgment that should be reversed. The first one was a breach of contract claim. The court found that we had violated the statute of limitations, that the claim was not timely. We believe that it was for a couple of reasons, as we pointed out in the briefs. One, under Arizona law, there is the concept of continuation, that every time there is a breach of the contract, it is a continuing breach and the statute of limitations continues to run. Second, Arizona law is very clear that it disfavors dismissals on the grounds of statute of limitations. In fact, there is case law that we cited to the court where justice requires, and there has actually been notice of the particular claim, that equitable estoppel will apply. Then the third argument is that the statute of limitations was told. Under the facts of this case, Your Honor, the first action was filed in 1991, a declaratory action was filed in 1992. Once it's filed in 1992, until this court decides, I believe it was in 1996, we believe that there was a tolling during that period of time. It's troubling to me that, as Judge Mayer pointed out, you keep saying, we believe. This is not a question of personal opinion. Yours or ours. This is a question of what does the authority in the law require? I think the authority requires that there was a tolling when the district court judge stayed all the proceedings a couple of times. One, while the case went up for re-examination, the party stipulated that it was going to be tolled. Everything was stayed. Parties can't stipulate to the impact of the statute of limitations. It operates by automatic operation of law. It's like saying a party can stipulate to this court having jurisdiction. No, they can't. The law either gives us jurisdiction or we don't have it. The parties have no say in the matter. I disagree respectfully with the court. Parties can stipulate to toll statute of limitations and— What's your authority for that? Your Honor, I think we've cited the authority in the briefs. Additionally, the district court can toll the statute of limitations, as it did in this case, while it went up for re-examination. Well, you're saying that a stay order is an adjudication that the statute of limitations has been tolled for whatever period the stay order remains? Yes. All right. Your Honor, additionally, the district court decided that claims one and two and eight and nine of the 731 patent, they were disallowed because of obviousness. Your Honor, again, when the court looks at— They weren't disallowed. They were invalidated after they were allowed on summary judgment by this district judge. That's right. Let me make sure on this tolling issue that I understand your argument. You're saying that as soon as the first action was filed, that the statute of limitations had been complied with, and that when that action was dismissed and a new action later filed, the first action without prejudice with respect to this claim, and a new action is filed, that the statute of limitations cannot be invoked once it has been satisfied by the filing of the first action? It could have been satisfied if we had not filed in a timely manner, for instance— Timely, but counting from when? Counting from when this action had been decided. For instance, it was filed in 91, and then this action, I believe, was decided in 96. We then filed in 98. From 92 to 96, it was tolled. So your position is you simply subtract those four years from the limitations period? That's right. Your Honor, on the issue of— The two actions that you're saying interact to the effect of four-year tolling, I thought they involved two different patents. There were two different patents. The statute applies to the contract action that we filed, which doesn't have anything to do with the patents. It was a separate contract action that was brought. On obviousness, the district court found that the patent was invalid based on obviousness. Your Honor, the 731 patent, there's a presumption of validity, but not only that, this patent had gone— had been submitted for reexamination. This patent had gone before the board. The board found that it was not anticipated and did not find— did not mention or say anything about obviousness. The authorities upon which the court looked at to determine that there was obviousness were before the board and the PTO. I don't understand your point. Does the non-adjudication by the PTO preclude a contrary adjudication? No, it doesn't preclude it, but it should strengthen the presumption of validity. What happens is the district court decides this— Regardless of how strong the presumption of validity is said to be, I understood that the limitations of the claims involved were admitted to be present in the cited prior art except for one limitation. Is that right? I think there were two limitations, but there was at least one. And I had thought from the reading that the one limitation that wasn't conceded to be found in the cited prior art reference was in the prior art as the uniform way that these rackets were always strung. No. The prior art reference was a French patent called Martel. Yeah. When you look at Martel, which is at— The court ruled that the only thing Martel didn't show was whether the main strings were even in number versus odd, but that the art made it clear that the answer to that is even because all of the prior art rackets had even numbers of main strings. That's not exactly accurate. The court found that the defendant's expert said that all the rackets that were being sold in the market in the United States had even number of strings. When you look at the Martel patent, which is at A5141 in the appendix, and you look at figure four, Your Honor, it shows how the stringing occurs, display. It only shows half of it. The other half would have to be a mirror image. Martel, the way the stringing goes, when you look at that, the A string starts at the top of the plane on one side and has to end at the top of the plane on the other. It anticipates that you're going to use an odd number of strings. All right. Well, we can check that back. Now, you're down to one minute. Do you want to save that for— Well, yes. Now, let me just finish this. When you look at the 731 patent, Your Honor, there are two things. Martel has a constant display all around it. And additionally, Martel, when you look at the patent, it talks about having an odd number of strings, even though it doesn't specifically say it. If you look at figure number four and you do a mirror image, it has to be an odd number of strings, string the way that they describe it here. Can I just ask a real quick question, yes or no? Did you, on the tolling issue on the statute of limitations, did you raise that before the district court? No. All right. Thank you, Mr. Maynard. Mr. Smith. Good morning, Your Honors. I was going to get to this last, but since it was a feature presentation of the appellant, I just want to confirm that, Judge Mayer, your understanding with respect to the jury demand is correct. Before the district court, athletic alternatives never disputed the fact that they had overlooked the service and had not served. And they finally served in July of 1999. And three months later, in the next paper we submitted, we advised the court that they had not timely filed, sorry, they filed, but they had not timely served their jury demand. So your Honor has that right. In this case, the appeal is based in large part on arguments that are raised for the first time on appeal. For example, before I say that, I should say that a large part of this case was this sideshow with a personal attack on counsel and a personal attack on Benetton or Prince's expert witness. And although Judge- That's not before. No, it's not. And I just wanted to say that although Judge McBeeh allowed them to put that on, in the end, she got it right, just as Senior Judge Strand had got it right in the earlier rulings, for example, dismissing the breach of contract case. With respect to breach of contract, on appeal, Athletic Alternatives argues that in Prince's 1999 summary judgment motion, we did not raise the argument or point to evidence showing a lack of merit. And we, in fact, did. They cite in the appendix only to the first page of our 1999 motion. But in the body of the motion, which is at A5198-99, we point out why there was no merit to the breach of contract claim. I thought it was dismissed as untimely, not for lack of merit. It was not dismissed for lack of merit, no. Well, then the question is, was it correctly dismissed as untimely? Now, Mr. Maynard here in this courtroom this morning makes an argument with a somewhat novel-sounding theory of polling for four years. So what we need you to do is give your response to that argument. I will do that, Your Honor. Yes. The breach of contract claim was raised in the first lawsuit, the 1992 lawsuit. It was dismissed by Athletic Alternatives Council when they determined that it was without merit. And that's because the supposed trade secret was the pending U.S. patent application, which was secret. But the PCT counterpart had been published well before they had transmitted any information to Prince. With respect to the tolling, there was never any stay of that first litigation. Athletic Alternatives had years to take whatever discovery they thought they needed if they thought they wanted to reinstate that claim. There was never any tolling. Second point is that— Breach issue. This is with respect to the statute of limitations. I understand. But with respect to the contract breach or with respect to the entire case? No, the contract breach. Right, OK. You said the litigation, and I wanted to make sure that I understood. I'm sorry. I misspoke. You're correct, Your Honor. Furthermore, this tolling issue was not raised below. The district court did not have an opportunity to pass on it. This is an issue raised for the first time on appeal. So there's nothing for this court to review. Isn't that an issue purely of law? I believe it would be, yes. This would be a novel theory. Wouldn't we be properly able to review it since it doesn't require any underlying fact-finding? I don't believe under this court's precedence that this court normally does that. This court said a number of times that we're a review court. We're here to determine whether the district court ruled correctly or not. Yeah, but tolling is an aspect of jurisdiction. We're always allowed to reassess jurisdiction, even on grounds not argued here by counsel. In fact, we have an obligation if there's any cause to reassess jurisdiction. I'm not quite sure how tolling is a jurisdiction as opposed to a defense that the appellant could raise to their lack of, to the untimely reassertion of their breach of contract claim. I'm not sure they're the same thing. Also, with respect to the claim preclusion argument, this is a novel, this is a theory that they're raising again for the first time on appeal. It was not raised below. Well, you're asserting that there's claim preclusion. We asserted that dismissal, which struck me as novel. I have to say that my impression has always been that without prejudice means that there isn't any claim preclusion without regard to whether this is raised in the same action or a later action or whenever. Well, then, yes. You argue to the contrary, but you don't provide any support for that. Perhaps it's not explained. That would not be logical, I don't believe, Your Honor, because in the 1992 lawsuit, they allege one of the two. Let me make sure I understand what it is you're saying isn't logical, because there's one piece of what I said, at least, that I think is incontrovertible, whether it's logical or not, because it's supported by a Supreme Court case. And that is the general proposition that a dismissal without prejudice means that the party who has suffered the dismissal without prejudice is entitled to refile in a subsequent action the same claim. Would you agree with that proposition? No, Your Honor. As I understand the doctrine of claim preclusion. Are you familiar with restatement section 20, restatement of judgments? Because that states the rule. And let me read it to you, because it seems to me it's right on point. This is referring to what is claim preclusion and when it applies. And it does not apply when the plaintiff agrees to or elects a non-suit without prejudice, or the court directs that the plaintiff be non-suited or that the action be dismissed without prejudice. There's a fundamental difference. But the general proposition, you don't disagree with that proposition, right? No, I agree. That's why I asked, what is it exactly that distinguishes this case from that proposition? OK. The distinction is that the 1992 case went to final judgment, which was affirmed by this appeal. And what you're referring to, Your Honor. Not with respect to the claim that was dismissed without prejudice. No, it didn't. Because they never put that claim back into the case. But under the doctrine of claim preclusion, because the breach of contract was part of the same transactional facts as Prince's design and marketing of this allegedly infringing racket, they were required to raise it as part of the lawsuit. And if they didn't, and that lawsuit went to final judgment, then under the doctrine of claim preclusion, they can't say, OK, we lost on our infringement theory because the Federal Circuit found there's no infringement. Now we're going to go back on the same transactional facts and argue on a different theory, namely that they breached the secrecy agreement. That claim, if they were to assert it, had to be part of the first lawsuit because the first lawsuit went to final judgment. And because the first lawsuit went to final judgment, the portion of the restatement is not for that fact situation. Do you have any support for that? Well, only this court's prior pronouncements that when you sue, you have to raise all theories that arise out of the same. The question that we have before us here is whether there's an exception to that proposition when the trial court allows the case, in effect, to be bifurcated, to go to judgment on one claim and to non-suit or dismiss without prejudice another claim. The court had said, I dismiss without prejudice and without any preclusive effect, even though had the claim remained in the case, it would have been barred. I'd like to see some authority that says that that bars the assertion of that later claim. And you didn't cite any in your brief. No, no, we didn't. And again, this is something that's not before this court because it's an argument raised for the first time on appeal. And under the Sage Product case and many cases after that, this court says they will not entertain arguments raised for the first time on appeal. And the other point I wanted to make on that, Your Honor, which on the illogical point, was that in the 1992 lawsuit, had they never alleged breach of contract and that case had gone to final judgment as it was, under the doctrine of claim preclusion, they could not file a second lawsuit on the same transactional facts, arguing that there's breach of contract. So it seems to me to be illogical to say that if they couldn't do that, that they can do that if they actually do sue for breach of contract in the first lawsuit and then drop it. The without prejudice meant that Judge Strand was saying to them, OK, if you find any evidence of this and want to reassert it in this lawsuit, I will let you do that. And that's all that the without prejudice means. With respect to the Claim 3 infringement issue, the district court found there's no infringement on two different grounds. And on appeal, Athletic Alternative only disputes one of the two. So and that is the second one, which is that there is only a single splay distance along the, quote, sides of the racket. But the other limitation that the district court found to be missing is that, and this is, for example, in findings 113 to 114, is the district court said, referring to the language of Claim 3, that the claim requires that alongside the degree of splay excuse me, is, must be greater in the regions where the string ends are longer than in the regions where the string ends are shorter. And the district courts correctly observed that in the accused rackets, the regions where the string ends are longer are roughly in the 3 and 9 o'clock positions. And that's the 12 o'clock position of the racket. And she correctly observed that the degree of splay at the 3 and 9 o'clock positions, or regions, was exactly the same as the splay above that region and below the region where the string ends were shorter. Since you have that before us, is that the mid-size or super-size? This is the oversize. Oversize, I'm trying to make that up. Yes. Sorry. So. It's captured me. And which is string, I guess that would be the one in which the disputed string would be number 17, right? That's correct, Your Honor. Could you point out string 17? Yes. It's right here. OK. So, in other words, if this string had been given full splay, we wouldn't be here today. Because they would. Can you move your finger just a little? I'm sorry. That's all right. I just want to see where that's. It's the third one from the bottom. OK. But there are, it does not have, I guess, a paired longitudinal string, right? No, it does not. So, if we were to say that corner means those areas that have paired strings, you wouldn't include 17? That's claim construction, yes. But the district court correctly found that the specification describes the corners of the racket as the places where the string ends are too short to support full splay, and where the splay distance is reduced in order to facilitate stringing. That seems a little circular, though, to me. I understand that's what the district court said. But let me ask you this, on that exact point. Trying to get a handle on what it is that is the corner, and looking at figure one of the patent, there are two elements of that figure that struck me in setting aside the text of the specification, which also pertains, obviously, to the question. At A107, I'm looking at figure one. There are these double-edged arrows, A, B, C, and D, around the outside of the frame, which seem generally to identify the corner areas, but not with great specificity. And then the other thing that seemed to me pertinent, and I would like your take on this, was the dashed line that goes around the playing surface. It has horizontal areas at the tip and the heel. It has a vertical area roughly along the sides. And then it has a 45-degree angle, four 45-degree angle segments. Do you think that tells us anything as to the meaning of corner that, or the letters tell us anything about the meaning of corner in the context of this patent? We didn't argue that, Your Honor, because I agree with your point that these may not be exactly positioned correctly. They're positioned a little bit different than the informal drawings of the patent application. And in these arrows, you can see that the corners, A, B, C, and D, are identified as the corners in the specification. But you can see that the quote corners include both matched pairs of string ends, main and cross. Plus, they also include individual string ends. And they're pretty imprecise. They're pretty imprecise. It's kind of a general area rather than a specific designation of a particular string. Now, let me ask you one other question along that line. If we look at the term corner as being a discernible but somewhat general term without the kind of specificity that either the district court found or that my suggestion of paired strings might suggest, would it be a finding of fact, as opposed to an element of plain construction, for the judge to have concluded, as she did, that string 16 and 17 are not within the general area of the corners? I mean, is that something that we would review as a finding of fact within the context of a general construction of the term corner? Or is that more in the nature of plain construction? I believe it's both. I believe that the portion of the district court's decision where she quoted from the specification and said the corner strings are where the display distance needs to be reduced to facilitate stringing is a claim construction. And then the question of whether in this racket that's the reason the claim has less display is a factual issue. But that factual issue is not disputed, that that's the reason it has less display, because it would have too sharp a bend angle. I see my time is up. Thank you very much, Your Honors, if you have no further questions. Thank you, Mr. Smith. Mr. Maynard will restore two minutes so you can have some rebuttal. Thank you. Your Honors, I'm looking at the patent where the corners and the sides are. When you look at figure one, I would agree that the dash lines are not that precise. However, Do you think the dash lines define the corners? Yes. OK. All right. Yes. And I think when you look to Prince's arguments in their Markman brief, and you look at the A1075, they actually look at figure one, and they talk about where the sides are. And the sides are those that only have lateral strings. And they're looking at figure one. And in contrast, the corners, and I'm quoting from their brief, of the racket after intersecting one another have both longitudinal and lateral strings. In their Markman brief, Prince had no problem describing what corners were in size. The corners were where there were longitudinal and lateral strings, and they intersected. And they relied upon figure one, and they relied upon figure eight. And figure eight is very clear as to what strings are going to be in the corners and what strings are going to be in the sides. Additionally, their expert, Mr. Davis, in his declaration that was attached to the construction under the Markman brief, had no trouble in describing the corners and the sides. And they hold him out to be the expert in this area. He says that this meaning of corners suggested by figure one, the one that the court just looked at, of the original drawings of the application which has become the 731 patent, thus the corners contain both mainstream ends and cross-string ends. What page are you reading from? It's A1078 of the appendix. And on line 16, Mr. Davis's declaration says the corners contain both mainstream ends and cross-string ends. This is typical of tennis rackets due to the curvature of the frame. In contrast, along the sides, only cross-string ends are anchored in the frame. And at the tip and heel, only mainstream ends are anchored in the frame. He goes on to say figure eight makes the same distinction in the corners. So their expert, when we went to the Markman hearing, had no trouble in telling us what the sides were and what the corners were. It was only when he got up and testified at trial that he seemed to have trouble. Thank you, sir. We thank both counsel. We'll take the appeal under advisement.